UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WENDY WALKER, MARY BOTTOMS, HEATHER ANDERSON, and all other similarly situated individuals, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:08 CV 32 PPS ) |
| EAST ALLEN COUNTY SCHOOLS, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant East Allen County Schools' ("EACS") motion for summary judgment. [DE 50.] Plaintiffs Wendy Walker, Mary Bottoms, and Heather Anderson brought this action as class representatives on behalf of members of four decertified bargaining units – nurses, food services workers, secretaries, and paraprofessionals ("the Class"). They claim that EACS's decision to decertify their unions had a disparate impact on women in violation of 42 U.S.C. § 2000e-2. EACS seeks summary judgment, which I find appropriate for two reasons: first, the Class has failed to meet its prima facie burden of proving disparate impact because EACS's decision to decertify was not an employment practice; and second, even if it was, the Class has not proffered an alternative employment practice that would have satisfied EACS's business needs as effectively as EACS's decision to decertify the four affected bargaining units.

I'll start with the pertinent facts, which are basically undisputed. For almost thirty years, EACS recognized bargaining units for the following non-teaching employees: transportation

workers, custodians, maintenance workers, nurses, food services workers, secretaries, and paraprofessionals. [DE 53 at 2.] But in late 2004, EACS faced a serious budget crisis. [DE 51 at 3.] Staring at a $1.2 million deficit in its general fund, EACS considered whether collectively bargaining with these groups remained financially viable. [*Id*. at 3, 6.] In an email to the EACS School Board, Superintendent Jeff Abbott stated that eliminating collective bargaining for non-teacher employees could save money and increase efficiency. [*Id*. at 3.] Abbott told the School Board that the inflexible labor contracts forced the school to pay wages and benefits that were higher than the market commanded. [*Id*.]

Heeding this advice, the EACS School Board decided to discontinue bargaining with four of the seven bargaining units. [DE 53 at 2.] EACS decertified the nurses, food-services workers, secretaries, and paraprofessional bargaining units and instead implemented a "meet and confer" policy to resolve labor disputes with these employees. [*Id*.] But EACS continued to recognize and collectively bargain with the transportation, custodial, and maintenance workers. [*Id*.] The four decertified bargaining units were almost exclusively comprised of female employees; 100% of the nurses, food services, and secretarial employees were female, and the paraprofessionals were 97% female. [*Id*.; DE 51 at 5.] Of the three units that remained certified, the custodians (79% male) and maintenance workers (100% male) were predominately male, while a majority of the transportation workers (77% female) were female. [DE 51 at 5.] EACS claims that market forces influenced its decision to only decertify the four affected units. [*Id*. at 8-9.]

Based largely on this statistical disparity, the named Plaintiffs filed an action with the EEOC alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964.

[DE 53 at 3.] The EEOC found reasonable cause to believe that EACS adversely impacted the class of females by denying them the same terms and conditions of employment as the male-dominated units. [*Id*.] The named class representatives then brought this suit arguing that EACS's decision to only decertify the predominately female bargaining units had a disparate impact on women in violation of Title VII.[1] [DE 1.] After I certified the Class, EACS filed this motion for summary judgment.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. In making this determination, I must draw every reasonable inference from the record in the light most favorable to the non-moving party.

---

[1] The Amended Complaint sought relief under 42 U.S.C. § 2000e-2(a)(1) and (2), which includes disparate impact and disparate treatment claims. [*See* DE 20.] EACS attacked the validity of both the disparate impact and disparate treatment claims in its motion for summary judgment. But in response, the Class only defended its disparate impact claim and presented no questions of fact or law in support of its disparate treatment claim. Moreover, according to EACS, attorneys for the Class told EACS they were only pursuing their claim under a disparate impact theory. [DE 58 at 1 n.1.] Therefore, the disparate treatment claim has been abandoned and I will treat it as such.

*Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999).

To succeed on a disparate impact claim, a plaintiff must establish its prima facie case by proving that "a facially neutral employment practice disproportionately impacts members of a legally protected group." *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005); *see* 42 U.S.C. § 2000e-2(k)(1)(A)(i). Unlike a disparate treatment case, disparate impact claims do not require proof of discriminatory intent. *Griffin v. Bd. of Regents of Regency Univ.'s*, 795 F.2d 1281, 1287 (7th Cir. 1986). To meet this burden, the plaintiff must identify the specific employment practice that is responsible for any statistical disparities and then demonstrate a causal relationship between the practice and the purported disparate impact. *Farrell*, 421 F.3d at 616. An employer may then rebut the plaintiff's claim by demonstrating that the employment practice at issue is "job related" and "consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Bew v. City of Chicago*, 252 F.3d 891, 894 (7th Cir. 2001). If the employer makes this showing, the plaintiff may still succeed by proving "that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Ricci v. DeStefanoe*, 129 S.Ct. 2658, 2673 (2009); 42 U.S.C. § 2000e-2(k)(1)(A)(ii) and (C).

The Class challenges a decision by EACS that affected the manner in which four predominately female bargaining units could negotiate wages and other economic terms and conditions of employment. According to the Class, statistical evidence demonstrates that EACS's decision to decertify these bargaining units fell more harshly on women. This evidence shows that the four decertified units were close to one hundred percent female, while two of the units that remained certified were predominately male (although the third – the transportation

employees – was mostly female). The Class says that this evidence overwhelmingly proves that EACS's decision disparately impacted women in violation of Title VII and is enough to meet its prima facie burden.

Based on the raw numbers, there is no question that the decision of EACS to decertify certain bargaining units had a greater impact on women. But there is a predicate question that must be addressed: was the decision by EACS to decertify the bargaining units an "employment practice" as that term has been construed by courts considering disparate impact claims? If the answer to that question is "no", then the Class' claim must fail.

EACS makes three arguments that relate to this point. First, as an initial matter, EACS argues that the challenged employment decision is not subject to a disparate impact analysis because disparate impact claims only apply to hiring or promotion policies, neither of which are challenged here. Second, EACS claims its single decision to decertify the units is not sufficient to constitute a specific employment practice under Title VII. Finally, according to EACS, because the challenged employment decision involved the exercise of business judgment driven by market forces, the decision was not an employment practice under the disparate impact analysis.

EACS's first argument merits little attention. It is true, as EACS notes, that this is not the typical disparate impact case. Ordinarily, disparate impact cases involve challenges to "a test or other method of screening applicants for employment" that bears more heavily on a protected group. *Lewis v. City of Chicago*, 528 F.3d 488, 491-92 (7th Cir. 2008), *cert. granted*, 130 S.Ct. 47 (Sept. 30, 2009) (No. 08-974); *see, e.g., Dothard v. Rawlinson*, 433 U.S. 321, 328-29 (1977) (height and weight requirement disproportionately excluded women); *Griggs v. Duke Power Co.*,

401 U.S. 424, 430-31 (1971) (requirement of high school diploma or satisfactory performance on standardized test disproportionately affected minorities). These cases largely involve facially neutral barriers that prevent members of a protected group from being hired or promoted. But disparate impact claims have not been limited to these situations. *See, e.g., Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119 (7th Cir. 1987) (disparate impact analysis applied to benefits claim). As *Colby* demonstrates, just because this case does not involve decisions related to hiring and promotion does not mean it can't be treated as a disparate impact case.

As for EACS's second argument – that single incidents typically are insufficient to constitute an "employment practice" – this is generally true when the employment practice at issue only affects one employee. *See Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1156 (7th Cir. 1997). But when a single decision adversely impacts a large number of employees, it can be challenged under a disparate impact theory. This is discussed most thoroughly in *Council 31, Am. Fed'n of State, County and Mun. Employees, AFL-CIO v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992) where the Seventh Circuit concluded that "[t]o the extent that members of a protected class can show significant disparities stemming from a single decision . . . there is no reason that decision should not be actionable." *Id*. In other words, just because EACS's decision to decertify the bargaining units was a single decision, is not a reason to grant summary judgment.

More persuasive, however, is EACS's third argument that market-driven employment decisions are not the type of employment practice subject to disparate impact analysis. *See Beard v. Whitley County REMC*, 656 F. Supp. 1461, 1469 (N.D. Ind. 1987) ("An employer's reliance on the market to set its wages is not the sort of 'policy' at which disparate impact

analysis is aimed.") (internal quotations omitted), *aff'd on other grounds,* 840 F.2d 405 (7th Cir. 1988); *Am. Fed'n of State, County, and Municipal Employees (AFSCME) v. Washington*, 770 F.2d 1401, 1406 (9th Cir. 1985) (holding a compensation system that was "the result of a complex of market forces, does not constitute a single practice that suffices to support a claim under disparate impact theory."); *see also American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 722 (7th Cir. 1986) (relying on the market to set wages is not actionable under Title VII absent a showing of discriminatory motive).

The seminal case supporting this theory is *AFSCME*. In *AFSCME*, in an opinion written by now-Justice Anthony Kennedy, the Ninth Circuit held that an employer's market based decision to pay one group of employees more than another is not the type of employment practice appropriate for the disparate impact model. 770 F.2d at 1405-06. The rationale is that market based decisions "involve[] the assessment of a number of complex factors not easily ascertainable, an assessment too multifaceted to be appropriate for disparate impact analysis." *Id*. at 1406. Such a decision "is not the type of specific, clearly delineated employment policy" contemplated by disparate impact. *Id*. Therefore, compensations decisions that are responsive to market forces do not constitute an "employment practice" sufficient to support a disparate impact claim. *Id*. In order to challenge this type of decision under Title VII, a plaintiff must show intentional discrimination under a disparate treatment analysis. *Id*.

Similarly, in *Beard*, this court held that an employer's reliance on the market to set its wages and benefits is not an "employment policy" for disparate impact purposes. 656 F. Supp. at 1469-70. The relevant issue in *Beard* was whether the employer's decision to give a wage increase to a male-dominated employment group but not a female-dominated employment group

disparately impacted females in violation of Title VII. *Id*. at 1468-69. The court held the plaintiffs failed to meet their prima facie burden of showing disparate impact because the employer's market based decision was not subject to disparate impact analysis. *Id*. at 1469-70. According to the court, "every employer constrained by market forces must consider market values in setting labor costs." *Id*. at 1469. So when a defendant makes a market based decision by, for example, increasing wages for one group but not another, it is not implementing an "employment practice" under the disparate impact prong of Title VII. Instead, it is simply responding to market forces. *Id*. Moreover, "reliance on the market is inherently job related" and "[b]eyond asserting the inherent 'business necessity' automatically built in to an employer's reliance on the market, the defendant cannot meaningfully respond" to the employees disparate impact claim. *Id*. at 1469-70.

On appeal, the Seventh Circuit in *Beard* did not discuss the employer's reliance on the market to set its wages because the plaintiff did not reserve the argument for appeal. *Beard v. Whitley County REMC*, 840 F.2d 405, 408 (7th Cir. 1988). Nonetheless, in affirming the result, the Court held that when an employer divides its workforce into two groups "for purposes of compensation-benefits negotiations," this type of decision is not an "employer-imposed policy or practice." *Id*. at 409.

Allowing an employer to rely on the market in making labor decisions without fear of being hit with a disparate impact claim makes sense, especially when the decisions are necessitated by an economic downturn. *See Finnegan v. Trans World Airlines Inc.*, 967 F.2d 1161, 1164 (7th Cir. 1992) (cuts in benefits for economic reasons "are an unavoidable response to adversity"). And this is why a market based response to economic adversity is not the type of

situation disparate impact claims were intended to address. *Id*.; *AFSCMA*, 770 F.2d at 1406 (an employment decision driven by market forces "is not the type of specific, clearly delineated employment policy contemplated by *Dothard* and *Griggs*"). Moreover, courts are ill-equipped to assess the propriety of these types of decisions. *See Colby*, 811 F.2d at 1126 ("[B]y divorcing compensation from market wages, such an order could seriously impair the efficiency of labor markets.")[2]

EACS claims that market forces commanded that it decertify only the four affected units. EACS cites to significant differences between the Class and the three certified units as evidence that its decision to decertify was driven by market forces, and its aim was to save money and increase management flexibility in response to its $1.2 million deficit. [DE 51 at 8.] For example, EACS typically provides insurance and paid holidays to employees who work year-round, like the custodial and maintenance employees. But none of the decertified units worked year round. [*Id*.] Also, insurance is a recruiting tool for the predominately female transportation workers, but not for nurses and paraprofessionals. [*Id*.] So EACS has saved money by unilaterally eliminating health insurance and paid holidays for some of these employees. [*Id*.] EACS also argues that the collective bargaining agreements for the three certified units provide EACS more control and flexibility than the agreements for the four decertified units. [*Id*.] The Class does not contest these facts.

More important, however, is EACS's claim that while other surrounding schools

---

[2] As noted above, it is true that in *Colby*, the Seventh Circuit applied the disparate impact theory to a case involving an employer's practice of limiting fringe benefits to certain groups. 811 F.2d at 1126. The court specifically noted, however, that the employer did not argue that the market constrained it to provide the benefit package at issue. *Id*.

collectively bargain with transportation, custodial, and maintenance employees, they generally did not bargain with nurses, paraprofessionals, food service workers, or secretaries. [*Id*.] Thus, according to EACS, while it needed to collectively bargain with the three remaining units to keep and retain employees, those same market forces did not exist for the decertified units. [*Id*.] In response, the Class does not dispute these differences or question their credibility. I therefore accept these facts as true. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement [of facts] fails to dispute the facts set forth in the moving party's statement . . . those facts are deemed admitted").

Taken together, these facts show that the Class has not met its burden. The Class does not dispute that EACS faced a $1.2 million dollar shortfall in its budget and had to make cuts. And, according to EACS's undisputed evidence, market forces drove its decision to only decertify the affected units – again, conditions that applied to the three units that remained certified did not apply to the Class.

In sum, market based responses to economic problems are generally not suitable for the disparate impact theory. *See Finnegan*, 967 F.2d at 1164 (finding "cuts in wages and fringe benefits necessitated by business downturns or setbacks are a far cry from the situations that brought the [disparate impact] theory into being."). In the absence of evidence of intentional discrimination, a court is in no position to determine how EACS should make cuts to its budget and ought not force EACS to ignore market commands to its competitive disadvantage. *See Colby*, 811 F.2d at 1126. Thus, because EACS's decision to no longer collectively bargain with the Class was not an employment practice, summary judgment is appropriate.

But even assuming the Class met its prima facie burden, its disparate impact claim fails

nonetheless. When a plaintiff establishes its prima facie case, the defendant must then show "job relatedness" or "business necessity." *Bew*, 252 F.3d at 894 (finding that "job relatedness" and "business necessity" are not two separate standards – "[t]he touchstone is business necessity."). Again, to show business necessity, EACS presents evidence that its decision to decertify the four affected units was driven by market forces, and its aim was to save money and increase management flexibility in response to its million dollar budget crisis. For example, EACS estimates that decertification eliminated over $500,000 per year in possible insurance costs, with actual per year savings estimated at over $200,000. [DE 51 at 6.] EACS also claims that it has increased management flexibility by eliminating mandatory arbitration and a rigid seniority based system for filling vacancies. [*Id*. at 6-7.]

The Class responds by claiming that questions of fact exist regarding whether EACS could have achieved the same cost cutting measures through collective bargaining. To rebut a business necessity defense, "[t]he proposed alternative [employment practice] must be available, equally valid and less discriminatory." *Allen v. City of Chicago*, 351 F.3d 306, 312 (7th Cir. 2003). The Class argues that continuing to collectively bargain with the four decertified units is an adequate alternative to the meet and confer process, especially since EACS continues to bargain with the other three bargaining units. But the Class fails to show how collective bargaining would cut costs and increase management flexibility as effectively as the meet and confer process. Clearly, the meet and confer process provides EACS more flexibility to unilaterally and quickly make changes to labor agreements in ways unavailable under the collective bargaining process. Indeed, in their response, the Class cites to deposition testimony from an EACS representative that proves this point:

> Q. So the distinction [between collective bargaining and meet and confer], in your mind, is the board – well, the board could also totally rewrite what the agreement is after the meet and confer; is that correct?
>
> A. That is correct. Under the meet and confer process, the board has the final decision. They could theoretically bring up an item that neither the management team or the employee group had discussed at the sessions.

[DE 53 at 13.] Moreover, the fact that EACS continues to bargain with the other three units is of no matter – EACS explained why the differences between the two groups drove its decision to only decertify the four affected bargaining units, and the Class did not dispute the reasoning.

The Class also asserts that questions of fact exist as to whether EACS's business necessity defenses were a mere pretext for discrimination. At oral argument, EACS claimed that pretext is not a factor in the disparate impact analysis. According to EACS, because pretext requires a showing of intent, it is reserved for disparate treatment claims. Moreover, EACS argued that if Congress intended pretext to be part of the disparate impact analysis, it would have included it in the 1991 Amendment to 42 USC § 2000e-2. But this argument is not supported by Seventh Circuit case law, *see Price v. City of Chicago*, 251 F.3d 656, 660 (7th Cir. 2001), or the statute's text, *see* 42 U.S.C. § 2000e-2(k)(1)(C) – both of which state that disparate impact shall be determined in accordance with the law as it existed prior to *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989), which recognized pretext in disparate impact cases. According to *Price*, the controlling principle set forth in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975) recognizes pretext as part of the alternative employment practice prong of the disparate impact test. 251 F.3d at 656; *see also Connecticut v. Teal*, 457 U.S. 440, 447 (1982) (finding the plaintiff may rebut a "business necessity" defense to a disparate impact claim by showing "that the employer was using the practice as a mere pretext for discrimination."). And district court's

in this circuit have consistently applied pretext to disparate impact cases. *See, e.g., Black v. Safer Foundation*, 2003 WL 21823483, at *6 (N.D. Ill. Aug. 6, 2003) (citing *Teal*); *Kozlowski v. Fry*, 238 F. Supp. 2d 996, 1016 (N.D. Ill. 2002) (finding defendant's business necessity defense pretextual in disparate impact claim); *Council 31, Am. Fed'n of State, County and Mun. Employees v. Ward*, 1996 WL 465387, at *1 (N.D. Ill. Aug. 9, 1996) (recognizing pretext as means of rebutting business necessity in disparate impact case).

"To show pretext, a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent." *Brown v. Ill. Dep't of Natural Res.*'s, 499 F.3d 675, 683 (7th Cir. 2007) (internal quotations omitted). The plaintiff may prove this by providing indirect evidence "that the employer's reason is not credible or that the reason is factually baseless" or by raising "an inference that the real reason for the adverse employment action was discriminatory." *Id*.

As support for its argument, the Class cites to the fact that EACS has not implemented all of the work rule changes that it claimed necessitated decertification. They also note that EACS admitted that the total amount of money it saved as a result of decertification was speculative. But the Class does not challenge that EACS has saved at least $215,185 a year in cost avoidance by eliminating insurance benefits, [*see* DE 51 at 6; DE 53 at 14-18], and that some of the work rule changes have increased management flexibility, [*see* DE 51 at 6-7; DE 53 at 10-14]. Also, the Class' evidence does not dispute that EACS acted in response to its budget crisis, nor does it show that EACS's true motive was discriminatory. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006) ("Pretext is a lie, specifically a phony reason for some action.") (internal quotations omitted). Moreover, the Class does not call into question EACS's claims

regarding the differences between the four decertified units and the three that remained.

Finally, the Class points to statements by EACS General Counsel and Rule 30(b)(6) representative, Tim McCaulay, that the Class claims demonstrate gender based animus and create a question of fact as to whether EACS's business necessity defense is pretextual. The Class cites three separate comments McCaulay made to EACS employees, which they argue evidence discriminatory animus. Generally, "[i]solated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth v. Quotesmith.Com, Inc*., 476 F.3d 487, 491 (7th Cir. 2007). But a remark can establish an inference of discrimination when the remark was (1) made by a decision marker, (2) around the time of the decision, and (3) in reference to an adverse employment action. *Hunt v. City of Markham, Illinois*, 219 F.3d 649, 652-53 (7th Cir. 2000).

First, McCauley allegedly referred to the paraprofessionals as "women para" and stated that they did not understand certain procedures and processes. [DE 53 at 15-16.] But McCauley made these statements in 2007, over two years after the decertification decision, in response to an investigation that had no bearing on this case. [DE 51-13 at 38-39, DE 51-9 at 3-4, 6; DE 53-9 at 48-49.] These statements are thus untimely and irrelevant under *Hunt*. 219 F.3d at 652-53.

McCaulay also allegedly stated that nurses were "a dime a dozen" and could be "easily replaced." [DE 53 at 15.] While these statements were certainly inappropriate, and "more confrontational than what one might expect in the normal day-to-day atmosphere of the workplace," these types of "inappropriate remarks, standing alone, need not raise an inference of discriminatory intent." *Beard*, 840 F.2d at 410. Indeed, the mere fact that EACS would have little problem replacing nurses, while not pleasant for the nurses to hear, does not show that the

School Board was motivated by discriminatory animus by decertifying the four bargaining units (and, in fact, it supports EACS's market based justification). *Id.* (finding employer statement that "he can go out on the street and pick up anybody off the street 'to come in and do you girls' jobs'" is not enough to show discriminatory intent).

More troubling is McCauley's comment to another EACS employee that she should be happy she doesn't have to "deal with all these groups of women . . . . When you can be down to three groups now." [DE 53 at 15.] Reading this in the light most favorable to the Class, and without any evidence to the contrary, this statement appears to have been made shortly after decertification and in reference to the decision to decertify the four bargaining units. I will thus assume the statement is sufficiently timely and relevant. *Hunt*, 219 F.3d at 652-53. What's important then, is McCauley's role in decertifying the bargaining units. Again, to evidence discrimination, remarks must be made by a decision maker, or one who provides input to the decision maker if it "may be possible to infer that the decision makers were influenced by those feelings in making their decision." *Id.* at 653.

As general counsel, McCauley's responsibilities included providing legal advice to the School Board and EACS superintendent regarding all terminations as well as serving as the chief negotiator and spokesperson in labor negotiations. [DE 51-1 at 12:9-16 (McCauley Dep.).] So, acting as EACS's counsel, McCauley provided input in the decision to cease bargaining with the affected units. [*Id.* at 37:8-38:3 (citing EACS Resp. to Interrog's).] But the final "decision to cease recognition was made by Superintendent Abbott and a majority of the elected school board." [*Id.*] In other words, whereas McCauley surely provided legal advice, the superintendent and the School Board were specifically charged with making these types of

policy decisions.  *See Hemsworth*, 476 F.3d at 491 (general counsel not a decision maker regarding mass layoffs of employees despite counsel's legal advice).  And the Class presents no evidence that McCauley played a role in the actual decision making process or that he was able to influence the decision in any way.  *See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) (finding derogatory remarks not evidence of pretext where plaintiff offered no evidence that speaker influenced decision makers).

Although McCauley's statements may evidence his animus towards women, they do not create an inference that the actual decision makers were driven by discriminatory animus or influenced by McCauley's alleged animus when they made their decision to decertify the affected units.  *Hunt*, 219 F.3d at 652 ("[T]he fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the *decision* had a discriminatory motivation.") (emphasis in original).  So these after the fact statements say nothing about the superintendent's or the School Board's motive for decertification, and the Class' pretext argument must fail.

In sum, because EACS has demonstrated that its decision to decertify the four affected bargaining units was driven by market forces in response to EACS's $1.2 million budget deficit, and the Class has presented no genuine issues of fact or law precluding disposition as a matter of law, EACS's Motion for Summary Judgment is **GRANTED**.  [DE 50.]

**SO ORDERED.**

Entered: April 23, 2010

                                                s/ Philip P. Simon
                                                PHILIP P. SIMON, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT